4-5901 139 S. W. 2d 23

Opinion delivered April 8, 1940.

*Callaway & Brown,* for appellant.
*C. Ramon DuVall,* for appellee.

McHANEY, J. Appellant and appellee are sisters. The latter brought this action against the former to have her declared to be a trustee in the acquisition of the title to and possession of a certain tract of real property near the city of Hot Springs, known as Seven Oaks Tourist Camp, for appellee, and to have the title thereto divested out of appellant and vested in appellee. The facts, as established by a preponderance of the evidence, are substantially as follows: Sometime about the year 1914, appellee's father and mother conveyed to her a tract of land owned by them in Wisconsin. Some contention is made that this deed was made in fraud of creditors, but since no creditor complained, appellant is in no position to do so. In September, 1926, appellee took an option to buy the property in litigation from the Gorge Realty Company for $1,500 to be exercised on or before a certain date. In order to make the down payment of $500 required to purchase same, she sold her property in Wisconsin for $800 through the Arkansas Trust Company of Hot Springs. On account of the fact that she was a helpless cripple her mother, Emma E. Wilkinson, acted for her. On September 15, 1926, Mrs. Emma Wilkinson wrote a letter to a Mr. Congdon, Treasurer of the Marengo Min-

ing Company of Duluth, Minnesota, to whom the Wisconsin land was sold, as follows:

"Georgia has an option on some lots, and wants to build a home here in Hot Springs, the option expires on the 24 of Sept., and there are other parties wanting the same lots—its a wonderful location for her line of work—She has accepted your offer for her land near Mellen and would like you to send the deed on the proper form of Wis. for her to sign, to the Arkansas Trust who will take care of it for you. This is what she would like you to do for her. Will you kindly send ck with the deed, so as she can take up her option on the 23 the option on lots and money can remain in the Bank until you receive your deed and let us know if it is O. K.

"Having to depend entirely on her own efforts to secure a home for herself she would be truly thankful to you for the favor the Arkansas Trust is handling this business for her and knowing the conditions have been very kind and are anxious to help her in every way. Again thanking you

"I remain

"Emma E. Wilkinson

"Attorney in fact for Georgia Wilkinson."

The property in Wisconsin was sold to the Marengo Mining Co., for $800. Acting for her daughter, the appellee, Mrs. Wilkinson exercised the option to purchase Seven Oaks, took $500 of appellee's money thus received, made the down payment and took the title to same in her name instead of taking same in the name of appellee. Thereafter Mrs. Wilkinson borrowed $2,000 from Dr. Ransier, mortgaging Seven Oaks as security, which was used to pay off the balance due on the purchase price and for the improvement of the property. All of which was without the knowledge or consent of appellee. Dr. Ransier permitted his note and mortgage to be barred by the statute of limitations and the property became free of debt, except for a $1,000 attorney's fee incurred by appellant in the litigation with Dr. Ransier regarding his note and mortgage. Under date of August 3, 1931, Emma Wilkinson conveyed the property to appellant for

a consideration of "one dollar and other good and valuable considerations." She thereafter died on December 16, 1934. This conveyance was also without the knowledge or consent of appellee.

The trial court found for appellee, that both Emma and appellant held the legal title to the property for appellee and entered a decree divesting the title thereto out of appellant and investing same in appellee, subject to the mortgage above mentioned for attorney's fee.

The first argument for a reversal relates to the acquisition by appellee of the Wisconsin property. It is said that it was conveyed to appellee by her mother in fraud of creditors and that, when the proceeds of that property was invested in Seven Oaks title to which was taken in the name of Emma Wilkinson, "this was in effect nothing more than a reconveyance to the mother of the property previously fraudulently conveyed." And it is true that this court has held that if, after a fraudulent sale the property is reconveyed by a valid conveyance, the grantee will be protected in his possession by virtue of the title thus acquired. *Bell* v. *Greenwood,* 21 Ark. 249. This principle has no application here. In the first place it is not shown that Emma was ever the fee owner of the Wisconsin property. She took the title to Seven Oaks in her name without the knowledge or consent of appellee. On the contrary, appellee protested to her mother vigorously when she learned of it. And the fact that the property may have been conveyed to her in fraud of creditors can be of no consequence to appellant who was not a creditor.

It is next argued that appellee furnished no money for improvements. The $2,000 furnished by Dr. Ransier on the security of her property inured to her benefit. Moreover, the property is shown to have earned a substantial income from the rental of cottages. It cannot be said that her money did not enter into the improvements. Nor can we sustain the pleas of estoppel, laches, and limitations.

On the whole, we think the decree of the court meted out substantial justice, and it is accordingly affirmed.